UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIO CORPORAN, | ) | CASE NO. 4:08CV2389 |
| | ) | |
| Petitioner | ) | JUDGE KATHLEEN M. O'MALLEY |
| | ) | |
| -vs- | ) | |
| | ) | |
| FEDERAL BUREAU OF PRISONS, et al., | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| | ) | |
| Respondents. | ) | |

On October 8, 2008, pro se petitioner Patricio Corporan filed the above-captioned petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 against the Federal Bureau of Prisons (BOP), Warden Joseph Gonja at the Northeast Ohio Correctional Center (NEOCC)[1] and Disciplinary Hearing Officer (DHO) Omaira Arvelo. Mr. Corporan, who is incarcerated at the NEOCC, asserts that his "prison rights" were violated and that he was denied due process when his administrative appeal was rejected as untimely filed. As a remedy, petitioner asks the court to restore 40 days Good Conduct Time, and the 1 year of visitation removed by the DHO as sanctions. He also requests a medical specialist to examine and treat his "damaged" right ear.[2]

*Background*

---

[1] The warden at the Northeast Ohio Correctional Center is Joseph D. Gunja

[2] After the incident report was issued, Mr. Corporan submitted two additional Sick Call Requests, claiming he had been in pain since January 13, 2007.

On January 13, 2007, Mr. Corporan suffered first and second degree burns after another inmate at Federal Satellite Low (FSL) in Elkton, Ohio doused him with a bucket of hot water containing cooking oil. He attaches copies of the Emergency Department Report prepared by Salem Community Hospital where he was taken for treatment on same date of the incident. A follow up appointment was scheduled for Monday, January 15, 2007 at Akron Burn Center. In the interim, it was recommended that Mr. Corporan take Ibuprofen for any pain. A second report was prepared by the hospital on January 14, 2007 which, again, suggested Ibuprofen for pain.

After being examined at Akron Burn Center, petitioner was provided instructions for home care which included a note that he "May take ~~acetaminophen and/or~~ ibuprofen for discomfort as directed. . . . May take *Tylenol #3* for discomfort as prescribed by your physician." AKRON REGIONAL BURN CENTER, *"Out-Patient Burn Home Going Instructions"*(emphasis in original). The instructions further noted that the healing time for First Degree burns could take three to six days and seven to twenty-eight days for second degree burns. A follow up appointment was scheduled for January 22, 2007 at the Burn Center. No copy of an assessment after that visit is attached to the petition.

Mr. Corporan was later transferred from FSL Elkton to N.E.O.C.C. On June 21, 2007, he submitted a Sick Call Request complaining he did not feel well and asking for a physical examination. Nurse Queener responded to the Request and indicated petitioner was seen at Nurse's Sick Call and then referred to Doctor's Sick Call.[3]

On September 17, 2007, Mr. Corporan sent another Sick Call Request asking to see

---

[3]The photocopy provided by petitioner is too faint to discern the date on which Nurse Queener signed the form.

2

a specialist for "my eyes and right ear I still have a problem from January 13, 2007." A response from Nurse Cage indicated petitioner was seen at Nurse's Sick Call on September 24, 2007, and was referred to Dr. Gabriel.

Petitioner prepared an Inmate Request Form, dated February 2, 2008, asking for an examination of his right ear and eyes "that were injured at the other Institution 01/13/2007." A staff member responded and suggested petitioner request a nurse sick call to evaluate whether a referral to an eye doctor or medical doctor was necessary. Petitioner filed another Sick Call request on February 27, 2008, but it is written entirely in Spanish.

On March 24, 2008, Mr. Corporan was charged with the use of narcotics or drugs not prescribed for the individual by the medical staff in violation of Code 112. Petitioner denied the charge and waived his right to a staff representative. He claimed the drugs he ingested were prescribed at FSL Elkton for pain after his January 13, 2007 injury. He alleged further that his requests for medical attention were ignored at N.E.O.C.C. and that he "didn't know that [he] . . . had this medication, I took them because I was in a lot of pain. I didn't know that will be a problem." INCID. RPT, at ¶III.,B. "Summary of inmate statement."

A DHO hearing was held on April 9, 2008. DHO Omaira Arvelo read Mr. Corporan his right to due process and he indicated he understood. The evidence Ms. Arvelo relied on to support her findings showed petitioner provided a urine sample on March 20, 2008. The sample was tested by Quest Diagnostics and confirmed a positive result for codeine. N.E.O.C.C. Nurse Glass also provided a statement on March 24, 2008 that determined petitioner was not taking any medication that would show a positive test for the use of codeine opiates. Based on the greater weight of evidence, the DHO found Mr. Corporan committed the offense charged. He was

3

sanctioned with the loss of 40 days Good Conduct Time, 40 days of disciplinary segregation and 1 year loss of visitation. A copy of the report was delivered to Mr. Corporan on April 16, 2008. It stated petitioner had 20 days to appeal the action under the Administrative Remedy Procedure.

On April 21, 2008, Mr. Corporan allegedly requested a 20 day extension to file an appeal. Ms. Arvelo advised petitioner that he needed to request a BP-230(13) from the unit team.[4] He alleges he prepared the form, but it took until May 16, 2008 before he received photocopies and was able to hand deliver it to a prison official for mailing.

The appeal was received by the Northeast Regional Office on May 27, 2008 and rejected. The rejection notice advised petitioner that his appeal should have been mailed to the Privatization Management Branch in the Central Office. An appeal was received by the Privatization Management Branch on June 16, 2008 and rejected as untimely. Two more attempts were made by Mr. Corporan to appeal and each was rejected as untimely. In his last request he explained that his appeal was delayed because of a prison lock down from April 25 - 27, 2008.

Mr. Corporan now argues the respondents denied his right to due process by rejecting his appeal as untimely. Petitioner asserts he should not be penalized by their delayed response to his request for photocopies or because of a prison lock down. He seeks an order dismissing the sanctions imposed by the DHO because he claims the drugs he ingested were prescribed at FSL Elkton. Moreover, he seeks an order directing the warden to provide an examination of his right ear by a "Earing Medical Specialist."

*28 U.S.C. § 2241*

---

[4] The petition does not mention whether or not Ms. Arvelo addressed petitioner's alleged request for an extension.

Courts have uniformly held that claims asserted by federal prisoners seeking to challenge the execution or manner in which a sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241. Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998)(citing United States v. Jalili, 925 F.2d 889, 893 (6th Cir. 1991)); Wright v. United States Bd. of Parole, 557 F.2d 74, 77 (6th Cir.1977). Here, the petitioner has properly filed his request for habeas relief in this court, as it has personal jurisdiction over his custodian.[5] The substance of his petition fails, however, as a matter of law.

*Exhaustion*

Federal prisoners must generally exhaust their federal administrative remedies prior to filing a habeas corpus petition pursuant to 28 U.S.C. § 2241. Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981) (per curiam). The exhaustion requirement as applied to federal prisoners is not jurisdictional, but its importance is well established. See Fazzini v. Northeast Ohio Correctional Center, 473 F.3d 229 (6th Cir. 2006); see also, e.g., Gates-Bey v. United States Parole Comm'n, 9 Fed.Appx. 308, 310 (6th Cir.2001) (unpublished) (noting that § 2241's exhaustion prerequisite is "not a statutory requirement"); Wesley v. Lamanna, 27 Fed.Appx. 438, 438-39 (6th Cir.2001) (unpublished) (same).

---

[5] With regard to Mr. Corporan's cursory allegations regarding a lack of medical care, it is a matter that clearly addresses his conditions of confinement and not the legality of detention. See e.g. Preiser v. Rodriguez, 411 U.S. 475, 484 (1973)(habeas corpus proceedings are the proper mechanism for a prisoner to challenge the "legality or duration" of confinement.) In Nelson v. Campbell, 541 U.S. 637, 643 (2004), the Court explained that "constitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core [of habeas corpus] and may be brought pursuant to § 1983 in the first instance." See also Muhammed v. Close, 540 U.S. 749, 750(2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action.")

The Sixth Circuit has recognized that the habeas exhaustion requirement is not without exception, as a prisoner's failure to exhaust available administrative remedies may be excused where pursuing such remedies would be futile or unable to afford the petitioner the relief he seeks. See, e.g., Aron v. LaManna, 4 Fed.Appx. 232, 233 (6th Cir.2001)(unpublished) (noting exceptions); Goar v. Civiletti, 688 F.2d 27, 28-29 (6th Cir.1982) ("A long line of Supreme Court cases recognizes the rule that a party need not exhaust administrative remedies before bringing a claim to federal court when the administrative remedy is inadequate or cannot provide the relief requested."). A habeas petitioner's failure to complete the administrative remedy process may be excused where the failure to exhaust is due to the administrator, rather than the petitioner. See Fazzini, 473 F.3d at 236. Exhaustion may also be excused when it would be futile to do so. Id. Because the failure to exhaust appears to be futile in this case, the court will excuse the failure to exhaust.

*Loss of Good Time Credits*

When a prisoner faces the loss of good time credits, due process requires that he receive the following hearing rights: 1) written notice of the hearing at least twenty-four hours in advance; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and 3) a written statement by the factfinder of the evidence relied on and the reason for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974). In addition, some evidence must exist to support the disciplinary conviction. Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455-56 (1985).

There is no dispute petitioner received more than twenty-four hours notice of the charges against him prior to his hearing. Moreover, he was advised of his right to be present during

the hearing, to call witnesses, and to appeal. The record also reflects that Mr. Corporan was provided a written statement of the evidence relied on and the reasons for the disciplinary action. Finally, Mr. Corporan's petition merely disagrees with the DHO's determination that the drugs found in his system were unauthorized; he does not dispute that there was sufficient evidence to support his disciplinary conviction.

Federal courts do not assess credibility or weigh evidence when reviewing a disciplinary conviction. A disciplinary action should be upheld if it is supported by "some evidence." Superintendent, 472 U.S. at 455-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. In Superintendent, the Supreme Court held that:

> [a]ssuming that good time credits constitute a protected liberty interest, the revocation of such credits must be supported by some evidence in order to satisfy the minimum requirements of procedural due process .... [a]scertaining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence, but, instead, the relevant question is whether there is any evidence in the record to support the disciplinary board's conclusion.

Id. at 454-55. Therefore, even though Mr. Corporan characterizes this as a due process challenge, this court's analysis cannot cross over to review a disciplinary committee's resolution of factual disputes. Id. at 455. Reviewing the decision of a prison disciplinary board does not involve a redetermination of an inmate's innocence or guilt. A district court merely ensures that a disciplinary decision is not arbitrary and that it has evidentiary support. Id. at 457. Thus, the only question is whether or not the DHO had "some evidence" to ensure fairness and justify her findings.

There was more than "some evidence" that the petitioner took drugs without a prescription. He admitted as much, but claims he was justified in his actions. In an addendum to his DHO appeal, Mr. Corporan argues that her decision was inappropriate "based on my medical condition, psychological problems estate [sic] of mind when I took the unauthorized medication to relief [sic] my pain." (Regional Admin. Rem. Appeal, 5/3/08.) There was sufficient evidence presented to support the DHO's conclusions, including, inter alia, petitioner's admissions, Nurse Glass's determination that he was not prescribed medication containing codeine, and documentary evidence. See Wolff, 418 U.S. at 564-65; Superintendent, 472 U.S. at 455-56. Because Mr. Corporan's petition simply reflects a disagreement with the DHO's decision and the sanctions imposed, he has failed to state a due process claim.

Accordingly, because Mr. Corporan has not shown that the DHO's decision was arbitrary or unreasonable, he has failed to establish any grounds on which he is entitled to relief. Therefore, this action is dismissed pursuant to 28 U.S.C. § 2243. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

s/ Kathleen M. O'Malley
KATHLEEN M. O'MALLEY
UNITED STATES DISTRICT JUDGE

DATED: December 18, 2008